IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 19, 2020 at Knoxville

**STATE OF TENNESSEE v. EDWARD POWELL**

**Appeal from the Circuit Court for Dyer County**
**No. 18CR258     Lee Moore, Judge**

_____

**No. W2019-01191-CCA-R3-CD**

_____

The defendant, Edward Powell, appeals his Dyer County Circuit Court jury conviction of the sale of cocaine, challenging the sufficiency of the convicting evidence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Edward Powell.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Danny Goodman, District Attorney General; and Tim Boxx, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Dyer County Grand Jury charged the defendant with one count of the sale of less than .5 grams of cocaine following a controlled buy by a confidential informant on August 4, 2017.

At the defendant's March 2019 trial, Dyersburg Police Department Sergeant Todd Thayer testified that on August 4, 2017, he, along with Officer Sterlin Wright, met with Jennifer Reeves, who had been working as a confidential informant, to set up a controlled purchase of cocaine. Ms. Reeves told the officers "that she could buy crack cocaine from a subject that she knows as Eddie P." Ms. Reeves then placed a telephone call to "Eddie P." that was recorded by the police. An audio recording of that telephone call was played for the jury but has not been included in the record on appeal. Sergeant

Thayer testified that "[i]n the phone call she told Mr. Powell she had $40" and arranged to purchase cocaine for that amount.

Sergeant Thayer said that Officer Wright searched Ms. Reeves's person and her vehicle and then "installed audio and video cameras in her vehicle." Sergeant Thayer supplied Ms. Reeves with $40 with which to make the purchase. Sergeant Thayer and Officer Wright followed Ms. Reeves to the location discussed during the telephone conversation to "verify that she did not have any contact with anybody else from the time she left our location to the time she met up with Mr. Powell." Although the officers were able to listen to Ms. Reeves in real time as she drove to the location and were able to hear her conversation with the defendant, they were not able to physically observe the transaction.

After Ms. Reeves completed the transaction, she told them, "'I'm headed back to the meet location.'" They then met her at the same location where they had previously searched her and outfitted her vehicle with recording equipment. Ms. Reeves did not make any stops or have any contact with any other person before meeting with the officers. Officer Wright recovered the drugs from Ms. Reeves while Sergeant Thayer removed the recording equipment from her vehicle. The recordings taken from inside Ms. Reeves's vehicle were played for the jury but not included in the record on appeal. Still photographs retrieved from those recordings were also published to the jury but, again, were not included in the record on appeal.

Sergeant Thayer testified that Ms. Reeves was compensated $100 for each of the controlled purchases that she made while working as a confidential informant. Sergeant Thayer acknowledged that he chose Ms. Reeves to act as a confidential informant because she had pending drug charges, explaining, "The ones who have drug-related pending charges, they know the drug dealers."

During cross-examination, Sergeant Thayer testified that neither he nor Officer Wright discussed Ms. Reeves's potential sentencing exposure should she be convicted of the pending charges, both Class B felonies. He also confirmed that neither of them told Ms. Reeves that she would lose custody of her children if convicted of the then-pending charges. Sergeant Thayer acknowledged that Ms. Reeves was not subjected to a "cavity search" and explained that they "typically don't do a cavity search even if it's a male confidential informant." He also acknowledged that the contraband that formed the basis of Ms. Reeves's pending charges had been discovered inside "a body cavity." He said that they did not record the search of Ms. Reeves's person or vehicle. Sergeant Thayer conceded that Ms. Reeves's pending charges were dismissed but said that "[t]hat'd be up to the DA's office."

-2-

Jennifer Reeves testified that she "had some charges" and that officers of the Dyersburg Police Department "approached me and pretty much told me work for them or I was facing 16 years." Although she could not recall the exact date, Ms. Reeves recalled an occasion when she met with two officers who performed a "[p]retty thorough" search of her body and vehicle before placing cameras inside the vehicle. She said that she told officers that she could purchase cocaine from the defendant, referring to him as Eddie P. She identified her voice and the defendant's voice in the recorded telephone call during which the two set up the purchase. Ms. Reeves said that she then traveled to the agreed location, "gave him money, he gave me the stuff[,] and I left." Following the exchange, Ms. Reeves "went back to the meeting spot and gave [the cocaine] to" Officer Wright. Ms. Reeves testified that she did not make any stops or have any contact with any person on her way to and from the location where she purchased the drugs from the defendant.

Ms. Reeves said that she was paid $100 for making the controlled buy that led to the charges in this case. Additionally, the drug charges that had been pending against her in 2017 were dismissed.

During cross-examination, Ms. Reeves said that the officers did not threaten her when they approached her about becoming a confidential informant. She also said, however, that she considered the officers' telling her that she faced 16 years in prison to be a threat. Ms. Reeves said that neither officer threatened to take away her children, but she said that she knew that if she went to prison her children "would go to the State." Ms. Reeves testified that she had been a drug addict for 15 years but that she was not using drugs at the time of the trial. Ms. Reeves said that she incurred the drug charges that were pending at the time of the offense in this case when the person in the car with her "when I pulled over gave them to me to hold." She said that she "tried to" hide the drugs in a body cavity.

Officer Sterlin Wright testified that, before Ms. Reeves left to make the controlled buy, he searched her as thoroughly as he "possibly could, male versus female, without being provocative or anything." He said that he did not go into her undergarments. Officer Wright also searched Ms. Reeves's vehicle. He found no contraband either on her person or in her vehicle. Officer Wright and Sergeant Thayer followed Ms. Reeves "to the location where she's going to make the buy" and then "watch[ed] from a distance and obviously monitor[ed] the video and audio recordings." Following the completion of the transaction, they "followed Ms. Reeves back to the meet location . . . and I immediately jumped out of the vehicle when we pulled up behind her and went and took the drugs from her."

Officer Wright described what he retrieved from Ms. Reeves as "[a] really small, clear baggie" that contained what "appeared to be crack cocaine. It was hardened

up like rock almost." He placed the baggie that he obtained from Ms. Reeves inside another plastic bag and sealed it with evidence tape and staples. He placed his initials on the outer plastic bag along with the report number. Officer Wright acknowledged that he mistakenly recorded the weight of the substance as 1.9 grams instead of "what my scale weighed it out to be as .19 grams." He added, "Of course, that's why we send it to the lab and they make sure it is what it is."

During cross-examination, Officer Wright said that although he was involved in Ms. Reeves's recruitment as a confidential informant, he "wasn't as hands-on as far as getting her to sign up. I think that's probably going to be Officer McDowell or maybe even Officer Thayer." He said that he was aware that Ms. Reeves had charges pending at the time of the offense but said that he did not think he was present when she was confronted about those charges. Officer Wright said that he was not aware that all the charges against Ms. Reeves had been dismissed.

Tennessee Bureau of Investigation Special Agent and Forensic Scientist Carter Depew testified as an expert in drug identification. Agent Depew weighed and tested the substance that Officer Wright received from Ms. Reeves. The substance was .2 grams of cocaine base. She said that the material she examined "was a powdery substance but it was not a smooth powder . . . . It was more chunky . . . so it wasn't a fine powder but it was primarily powder."

The defendant testified that on August 4, 2017, Ms. Reeves "called me she asked me did I have anything. I said yeah, I got something. She pulled up to get it." The defendant said that when Ms. Reeves "pulled up and she got -- she didn't get nothing." He explained that when Ms. Reeves asked if he "had anything," he believed that she was referring to "Inositol" "pills that you use to cut cocaine with." He said that he had known Ms. Reeves for approximately three years, that he knew that Ms. Reeves sold drugs, and that she would use Inositol to "add on to it or whatever." The defendant claimed that when Ms. Reeves came to him on the day of the offense, he gave her Inositol and "didn't sell her nothing."

During cross-examination, the defendant denied having received any money from Ms. Reeves and denied that it was his hand depicted in the video recording receiving money from Ms. Reeves. He acknowledged that he was the person in the video recording who could be seen handing a bag containing a white substance to Ms. Reeves. He maintained that Ms. Reeves had somehow hidden the bag she actually received from him and replaced it with another bag that she had obtained elsewhere.

Based upon this evidence, the jury convicted the defendant as charged. Following a sentencing hearing, the trial court imposed a Range II sentence of six years' incarceration.

In this timely appeal, the defendant challenges the sufficiency of the convicting evidence, arguing that "[t]he issue of the credibility of the informant gives rise to substantial doubt as to whether there was a web of guilt woven around the defendant that would substantiate a guilty verdict."

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

The evidence adduced at trial established that Ms. Reeves telephoned the defendant to arrange for the purchase of crack cocaine. Officers searched Ms. Reeves's person and vehicle, outfitted the vehicle with recording equipment, and followed Ms. Reeves to the location that she and the defendant had agreed upon. The transaction between the defendant and Ms. Reeves was captured on a video from two separate angles, and the recordings were played for the jury. Although the defendant claimed to have provided Ms. Reeves with Inositol free of charge, the jury was free to reject his testimony. The defendant acknowledges that it is not the role of this court to revisit the credibility of the witnesses and then invites us to do just that. We respectfully decline this invitation. In our view, this evidence was more than sufficient to support the defendant's conviction.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE